IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAWN MICHELE WEILER ) | |
| ) | |
| v. ) | No. 3:14-1347 |
| ) | Judge Campbell/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:     The Honorable Todd J. Campbell, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which defendant has responded (Docket Entry No. 15). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 9),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her applications for benefits in August and September of 2010, alleging disability onset as of March 15, 2009. (Tr. 19) Her applications were denied at the

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on November 1, 2012, when plaintiff appeared with counsel and gave testimony. (Tr. 41-72) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until December 14, 2012, when she issued a written decision finding plaintiff not disabled. (Tr. 19-31) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, scoliosis, and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift 20 pounds occasionally and 10 pounds frequently; and only carry 10 pounds occasionally. For any given eight-hour workday, she can sit for six hours, stand for four hours, and walk for four hours. In addition, the claimant would need to alternate between sitting and standing every hour. She can use upper extremities occasionally for pushing, pulling, reaching, and handling. She can frequently use feet for foot controls, and would be limited to occasional postural activities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 24, 1969 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21, 25, 29-31)

On April 23, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following review of the record is taken from plaintiff's brief, Docket Entry No. 14 at pp. 3-7:

A. <u>Plaintiff's Age and Work Experience</u>.

Plaintiff Dawn Weiler was born March 24, 1969. She was 39 years old at the time of the administrative hearing, and was thus a "Younger Individual" under the Social Security Regulations. See 20 C.F.R. § 416.963. (TR page29) The plaintiff has past relevant work as a cutter, short order cook, cook, kitchen helper, fiberglass laminator, and sandwich maker. The judge found that the work-related functions of the above listed past relevant jobs would require activity precluded by the residual functional capacity. The judge further acknowledge[d] that the claimant was unable to perform past relevant work. (TRp29)

B. <u>Plaintiff's impairments</u>

The plaintiff has numerous conditions which would be considered severe under the nomenclature of the Social Security disability program. These include: fibromyalgia [and] cervical spine disease[.]

<u>Medical statements of fact</u>

The plaintiff has had a lengthy history of medical problems which are shown throughout the index which was examined by Judge Smith at the hearing. There are medical records dating back to 2002 which show[] a mild disc bulge at L4-5 and degenerative disc disease. (TRp.370) The plaintiff began receiving steroid injections.(TRp.375) She began going to see a doctor at The Pain and Spine Consultants and was diagnosed with myofascial pain syndrome, cervicalgia, lumbago, cervical radiculopathy, [and] lumbar radiculopathy versus peripheral neuropathy. She also went to Neurological Associates and was diagnosed with degenerative disc disease of the lumbar spine, spondylosis of [the] cervical spine, fibromyalgia, reflux disease, and myofascial pain syndrome. She went to see Dr. James Baldwin M.D. between 2002 and 2009.(TR pgs 359-751) She received steroid injections beginning on July 11, 2003.(TRp375)

On her consultative exam from Dr. Bruce Davis, the plaintiff was diagnosed with cervical disc disease, lumbar disc disease, posterior pain with lower back pain, and had unsteady painful gait maneuvers. On March 20, 2009 Dr. James Baldwin M.D. gave her a diagnosis of fibromyalgia.(TRp797) On a[n] additional consultative exam on March 31, 2009 Dr. Albert J Gomez M.D. diagnosed plaintiff with fibromyalgia [and] degenerative joint disease and stated that she could sit six hours a day. (TRp807)

In another consultative exam by Dr. Dorothy Lambert PhD, the plaintiff was diagnosed and was markedly impaired in her ability to react to changes.(TRp864)

Presented prior to the hearing before Judge Smith (ALJ), the plaintiff submitted a Treating Source Statement by Dr. Shannah Steel. (TRpgs 958-962) Dr. Steel diagnosed the plaintiff

with fibromyalgia, cervical spondylosis, ruptured disc, PTSD, depression, [and] anxiety. Medical evidence Dr. Steel used to support her findings was an MRI from 2003 which showed thoracic scoliosis and cervical spondylosis and another MRI from 2003 showing disc bulge and degenerative disc disease. Furthermore Dr. Steel pointed out all of the symptoms that the plaintiff has which [are] associated to the fibromyalgia, anxiety, and back problems. The doctor furthermore stated [that every] 1-2 hours [plaintiff] would need to either lie down or sit quietly, [that she] would be off task 25% or more the time, that her impairments would likely produce good days and bad days and that she would be expected to miss about four days per month. Lastly, Dr. Steel stated that her patient's impairments as demonstrated by signs, clinical findings and test results are reasonably consistent with the symptoms and functional limitations described in her evaluation of this patient. (TRpgs 958-962)

      C. <u>Administrative Law Judge Findings</u>.

The ALJ first addressed the claimant's mental impairments. On April 2[0], 2007, [in connection with a prior application for benefits, Dr. Deborah Doineau consultatively examined plaintiff.] (TRp754) She determined mild limitations in understanding and remembering and moderate limitations in understanding and sustaining concentration in place. [On]March 27, 2009 Dr. Deborah Doineau, Ed.D. administered another consultative examination. (TRp800) Dr. Doineau again determined that the claimant had no limitations with understanding or remembering, but moderate limitations with sustaining concentration or pace.

On April 23, 2009 (TRpgs. 811-824), Mason Curry PhD completed a mental functional capacity assessment and a psychiatric review technique on the plaintiff. Dr. Curry determined the plaintiff had mild limitations and restrictions of daily activity and maintaining social functioning, a moderate degree of limitation in maintaining concentration, persistence, or pace but that the [] plaintiff would have some difficulty completing a normal workday-work week at a consistent pace without interruptions from psychologically-based symptoms.

A consultative exam (TRpgs 860-865) was given by Dorothy Lambert PhD, who examined the plaintiff on March 25, 2011. The plaintiff had a GAF score of 55 with a moderate impairment in concentration and persistence, mildly impaired in the ability to interact with others, and **markedly impaired in the ability to react to changes**. (TRp864)

On April 1, 2011, another psychiatric review technique and mental functional capacity assessment was done by Kimberly Tartt-Godbolt. (TRp867-880 and 881-884) [Dr.] Tartt-Godbolt did not mark the plaintiff as markedly limited in any category but did determine that the plaintiff had [] moderate limitations and restrictions of activities of daily living, and

5

difficulties in concentration, persistence and pace. According to Dr. Tartt- Godbolt, the totality of the evidence indicated mild to moderate psychological limitations.

Judge Smith then addressed the physical impairments. Judge Smith found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, subpart P, appendix 1 (20 CFR 404.1520 (D), 404.1525, 404.1526, 416.920 (D), 416.925 and 416.926). The judge found that the plaintiff had a RFC to perform less than light work. (TRp 25) Furthermore, she found that the [] plaintiff could sit for six hours, stand for four hours, and walk for four hours. The plaintiff would need to alternate between sitting and standing every hour and would be limited to occasional postural activities. The judge used several sources of examinations to come to her conclusion.(TRp 25)

Judge Smith noted that on March 31, 2009 the claimant went to Dr. Albert J. Gomez for a physical consultative examination (TR pgs 807-810). Dr. Gomez noted plaintiff's complaints about muscle pains, multiple joint pains and chronic pain in her arm, leg, neck, lower back, hips, knees, and ankles. On physical examination, the doctor noted that the plaintiff had marked tenderness to palpation of the back, and arms and leg muscles. Dr. Gomez's impression of the [] plaintiff was fibromyalgia, degenerative joint disease, and alcohol abuse.

On December 28, 2010, Dr. Bruce A. Davis administered a consultative exam on the [] plaintiff. (TRp. 838) He noted a history of degenerative disc disease and fibromyalgia and diagnosed the plaintiff with degenerative neck and back disc disease, fibromyalgia, hypertension, and anxiety-depression. On physical examination, he noted back pain with slope position changes, [and] incomplete squatting and tenderness in back and upper chest area. He noted slow gait maneuvers across the exam room. **Dr. Davis concluded that the plaintiff should never climb ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl.** (TRp. 845)

In the evidence was a medical source statement from a treatment center that the plaintiff had gone to many times. Dr. Shannah Steel, D.O. filled out and signed this source statement and indicated that the plaintiff experienced pain all over as well as centralized pain in her neck and back, and determined that the claimant would need to take unscheduled breaks during a working day for one to two hours. (TR p. 961) Also, Dr. Steel determined claimant would need to lie down or sit quietly, rarely lift or carry up to 10 pounds, and rarely stoop, crouch, squat, [or] climb ladders and stairs. Lastly, Dr. Steel determined that the [] **claimant could sit and stand-walk for combined four hours in an eight hour workday. (TR p. 967)**

(Docket Entry No. 14 at 3-7) (Emphasis in original).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima*

*facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff appears to argue that the ALJ erred in weighing the opinion evidence from multiple consulting physicians, as well as one treating physician, Dr. Steel. However, she begins her argument by referring to the standard for evaluating her subjective report of symptoms (Docket Entry No. 14 at 7-8), drawing particular attention to the evidence of her mental impairment contained in reports of two nonexamining psychological consultants (Drs. Currey and Tartt-Godbolt) and two consultative examiners (Drs. Lambert and Doineau). Plaintiff argues that, with these reports in mind, the ALJ found that her medically determinable mental impairments could reasonably be expected to cause symptoms which would interfere with her ability to function in the workplace. Id. at 8. However, this assertion misrepresents the ALJ's decision. The ALJ in fact addressed the plaintiff's subjective report of symptoms by reference to plaintiff's *physical* impairments (Tr. 28), after having earlier discussed the reports of the mental health sources on her way to finding that

9

plaintiff did not have any severe mental impairment. (Tr. 22-24) The undersigned generally agrees with the government's argument in response to plaintiff's attack on the ALJ's weighing of the evidence from non-treating mental health professionals (Docket Entry No. 15 at 4-10), particularly in view of plaintiff's failure to identify or produce any evidence from a treating mental health professional. Moreover, it appears that plaintiff waived any claim of her mental impairments being so severe as to reasonably be expected to interfere with her work-related functioning, as her attorney (then and now) gave an opening statement at the hearing before the ALJ in which he represented that plaintiff had only "a few milder mental problems," and that the crux of the case involved her back and neck issues along with fibromyalgia. (Tr. 44) Cf. Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993) (finding that the ALJ had no obligation to investigate an impairment not presented at the time the disability application was filed and not offered at the hearing as a basis for disability).

Plaintiff next faults the ALJ for failing to include in his hypothetical questions to the vocational expert the need to avoid bending, stooping, or crawling -- despite the opinions of unnamed consultative examiners identifying this need -- whereas, the ALJ found that plaintiff could engage in such postural activities on an occasional basis. (Docket Entry No. 14 at 8-9) However, a review of the consultative examiners' assessments reveals that only Dr. Davis opined that plaintiff should never engage in postural activities. (Tr. 27, 845) Dr. Gomez did not assign any postural limitations, but noted that plaintiff was possibly not putting forth her best effort during range of motion and motor strength testing. (Tr. 27, 809) The nonexamining physicians of record opined that plaintiff could frequently perform postural activities including bending, stooping, and crawling. (Tr. 831, 852) In view of this record, the undersigned finds that the ALJ properly rejected the assessment of Dr. Davis

insofar as it precluded postural activities (Tr. 29),² and thus did not err in failing to question the vocational expert regarding the impact of such a restriction.

Lastly, and at the heart of plaintiff's case, it is argued that the ALJ improperly rejected the assessment of Dr. Shannah L. Steel, whom plaintiff refers to as a treating physician. Plaintiff's position is as follows:

> The ALJ gave little weight to the Medical Source Statement by Dr. Steel. She apparently gave little weight due to the fact that she states that this was the only day that Dr. Steel examined the claimant thus, there was no longitudinal treatment history by Dr. Steel to support her statement. However, the plaintiff had been going to Regents Medical Center from June 2011 and went there up to the date of the disability hearing. Even though Dr. Steel may have written this statement after seeing the claimant 1-2 times, Dr. Steel relied on the medical records from her office where the claimant had been treated for some time.

(Docket Entry No. 14 at 9) As defendant points out, plaintiff cites no authority for this proposition. In fact, the authority is to the contrary. In St. Clair v. Astrue, 2010 WL 3370568 (N.D. Ohio Aug. 25, 2010), a case involving an opinion offered after a single physical examination by a physician who was in practice with the claimant's treating physician, the district court observed that "[c]ourts addressing this issue have noted that a doctor who has never examined a claimant cannot be considered a treating physician, simply

---

²Plaintiff, in the concluding sentence of her brief and on the heels of an argument concerning the opinion of alleged treating physician Dr. Steel, asserts the following: "Furthermore, it would appear that the ALJ hand picked all statements by the consultative examiners that would show abilities for the plaintiff to work, use them to deny the plaintiff disability, while she disregarded those statements from the same consultative examiners which would lean towards a favorable decision to award disability." (Docket Entry No. 14 at 10) This bare reference to cherry-picking from the individual reports of unnamed consultative examiners, devoid of any citation to the record, is not a proper legal argument. Moreover, as explained above, the medical record as a whole supports the ALJ's weighing of Dr. Davis's report.

because the doctor practices within the same practice group as claimant's actual treating doctor." Id. at *5 (citing Walker v. Comm'r of Soc. Sec., 2009 WL 3126277, at *19 (S.D. Ohio Sept. 23, 2009), and Rice v. Astrue, 2007 WL 3023546, at *3 (D.Me. Oct. 12, 2007) (reasoning that such doctor stands "in no better position than the state-agency reviewing physicians who had available to them the plaintiff's 'clinical file'")). In short, the ALJ properly found that, as a physician who had only examined plaintiff once before opining as to her limitations, Dr. Steel could not be deemed a treating physician. Accord Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007). The ALJ further noted that "the treatment records of the other physicians practicing at Dr. Steel's office would not support Dr. Steel's medical source statement for the claimant" (Tr. 29), and so declined to give perceptible weight to Dr. Steel's statement. The undersigned concludes that this determination -- and the determination of plaintiff's RFC for less than the full range of light work based on the well-developed record of medical opinion and clinical evidence -- is supported by substantial evidence. The decision of the SSA should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections

filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 14th day of September, 2015.

      s/ John S. Bryant
      JOHN S. BRYANT
      UNITED STATES MAGISTRATE JUDGE